Good afternoon, ladies and gentlemen. We have one case on the calendar this afternoon, Zamora v. Adams. Counsel? Good afternoon, Your Honor. May it please the Court, Deputy Attorney General Stephen Mercer for the respondent. Following the grant of the petition for writ of certiorari, this case is now back before this Court without the constraints of Crawford v. Washington. It is a straightforward ADEPA analysis of the California Court of Appeals' evidentiary decision and whether that evidentiary decision and that admitted evidence violated the petitioner's right to confrontation. Would you agree that in light of the fact that the Supreme Court vacated our decision that we're back to where we were the first time around, except that we now know Crawford is not retroactive? Yes, Your Honor. So that prior decision is of no further effect? I think, being that the prior decision was vacated, this panel is free to issue whatever opinion they decide to. Yes. The issue that remains, the governing principles of Ohio v. Roberts. And we've briefed this issue extensively. We covered it at the first oral argument. Granted, we have a newly constituted panel here. I don't want to rehash that additional or that previous briefing argument before the Court. I would like to address a few points and highlight my argument in a few points and address the 20HA letter filed by the petitioner regarding the recent Windsor decision. Windsor was another ADEPA case where they did find that there was, the Court found that there was a confrontation clause violation. However, its Respondent's position that Windsor not only was wrongly decided in our opinion, but doesn't apply to this case, that dealt with the firmly rooted hearsay exception in California of a spontaneous declaration or an excited utterance. And the Windsor Court, while not saying it expressly in their holding, they essentially ruled that the California courts made an unreasonable determination of the facts. Because although the California courts found there to be an 911 call made prior to the statements. Furthermore, in Windsor, those statements recounting a threat to a police officer were essentially the only evidence against the petitioner. There couldn't be a harmless error situation there. Here, we have a properly admitted crime scene statement that identifies the petitioner as a shooter. But counsel, before you get into harmless error, I noticed you talked about Roberts, but neither the California court nor you, as far as I can tell, have talked about applying what appears to me to be the controlling case of Idaho v. Wright. Now, Idaho v. Wright says that under Roberts, the declarant's truthfulness has to be so clear that the test of cross-examination would be of marginal utility. Now, did the California court apply that test? They did not explicitly apply Roberts. But what they did do was respond to the appellant's claim, which was that the evidence was inadmissible under California's evidence section 1370, dealing with unavailable witnesses. And one subsection of that applies the California court's claim that the defendant  So the claim that the defendant was not guilty of any crime is not in the inditia of trustworthiness analysis, which is coming right from Ohio. Kennedy, I recognize that he said the inditia of trustworthiness was there. But did he apply a test that said the truthfulness must be so clear that cross-examination would be of marginal utility? They did not expressly state that on their own. But that's not fatal, is it? Or is it? No, I don't think that it is, because, number one, the California Court of Appeal and California Supreme Court were presented with an evidentiary challenge, whether the trial court misapplied section 1370 to admit this hearsay evidence. They did not frame this in a strict Ohio v. Roberts or Idaho v. Wright scenario. And that's why their analysis goes through a litany of inditia of reliability. So they may then not have really applied that test. They may have just done what you said, the State – applied the State court test. Yes, but the evidentiary code section, I believe, is patterned right after the holding of Ohio v. Roberts involving whether the evidence bears the particular guarantees of trustworthiness. It's that same language. But in doing a full 1370 analysis under California law and applying all those subsections, they also pointed to corroborating evidence, which counsel for a petitioner agrees should be discounted. That's not part of a proper Ohio – or, I'm sorry, Idaho v. Wright analysis. So in that sense, it's evident from their opinion that they didn't apply that particular case. What they did do is answer the challenge to the evidence as it was framed to them by the appellant. Part of their response to that analysis is to go through a litany of inditia of reliability. And our position is that based on that litany of inditia of reliability, this wasn't an unreasonable application of Supreme Court precedent in the sense that it meets the standards required by the U.S. Supreme Court. Also, I know that there's been mention, has this prior opinion been vacated? Is this panel bound to follow it again? I know that the panelists previously constituted did find that without this crime scene statement in and of itself, by itself, was insufficient. That I would respectfully ask the panel to revisit should they find confrontation clause error here. I think that the California Court of Appeal extensively covers the value and evidentiary weight of that crime scene statement alone. Based solely on that statement, the California Court of Appeal noted that it established The statement was, they talked about the statement that Cruz made to the officers right at the crime scene of the night. He identified the petitioner. Well, he said, child, right? Yes. And that's not the name of Mr. Zamora. It's child. Well, I think we've argued that extensively in the brief that child or child, which witnesses spelled interchangeably, pronounced interchangeably, and even the party's attorneys used interchangeably at trial. But in any event, your argument is probably that the California court made a reasonable interpretation of that factual situation to reach that result. Yes. And under 2254E1, those are factual determinations that require deference from this Court. But that crime scene statement, along with the corroborating testimony of a separate eyewitness, alone showed, as the California Supreme Court said, direct participation, presence, gang motive, intent to kill, and flight. And based on that, I think that the California Court of Appeal's decision, even if this Court finds the Confrontation Clause error was harmless under Brecht v. Abramson. Thank you. Unless the panel has additional questions, I'd like to reserve the remainder of my time for about a minute. Thank you, counsel. Thank you, Your Honors. Good afternoon. May it please the Court. My name is Wayne Young, and I represent the habeas petitioner, Napoli Zamora. In his prior decision in this matter, the panel held that Mr. Zamora was prejudiced by the admission of the statements. Now, Judge O'Scalin raised an interesting question, whether the vacation of the judgment also vacates that. I don't – there's nothing different. It's a different way to get about the issue, the admission of the statements. But nothing about prejudice has changed by the Supreme Court's decision in Bakken. Well, all we're saying, I suppose, is that the law of the case doesn't apply. We're free to reach that same conclusion this round, but we're not bound by what we said last time. Isn't that where we are? I hadn't thought that through. I had assumed prior to today that, yes, we were. This Court made a decision that my client was prejudiced. The statements were excluded under Crawford in that case. I'm arguing now they should be excluded under Ohio v. Roberts. If those statements are excluded, I don't see any basis to conclude that there was no prejudice. Except for the fact that the Supreme Court of the United States simply vacated that decision. Poof. It's gone. Well, again, the logic that brought this Court to that conclusion. Okay. Well, that's understandable. Sure. So the remaining issue, assuming prejudice, is did the admission of those statements violate Ohio v. Roberts? The district court found they did on both prongs of the Ohio v. Roberts test, both unavailability and reliability. Now, there's a question of waiver on the unavailability. The California Court of Appeal held that Mr. Zamora had waived that issue by not objecting properly in the trial court. The district court went to the merits of that issue on two grounds. One, it found procedural default by the State for failure to object in its answer, failure to raise the issue of procedural default. And if not procedural default, we also get to the merits by way of ineffective assistance of counsel. Well, let me stop you there. The first route I understood was cited by the district court to explain some later defect, some failure by Petitioner to raise the issue before the California, I think it was the Supreme Court. I'm still stuck at the trial court, and I can't figure out why the failure to object there in the course of a colloquy with the trial court that said, okay, we're all in agreement that he's unavailable, we don't have to bring him in, no objection coming from Petitioner. Why that doesn't end that question right there? Well, first, I think there's some ambiguity as to whether or not that did constitute a sufficient objection. At one point, the trial court said all the objections are preserved. But this discussion went on for several days. And it is true that trial counsel did not say, I object on the ground of unavailability. The trial court says, all right, is there any, I don't think we need to ask him any questions. I mean, if everyone agrees he has such a right, we don't have to go through the drill of doing that unless I'm told I'm supposed to, but I don't think we necessarily have to do that. So unless there's another comment, then we'll just declare he's an unavailable witness legally. There's no objection from Petitioner's counsel. I agree on that date. But this was a discussion that took place over three or four hearings. And at a prior hearing, the trial court judge just said, after discussing the admissibility of the statements, all the objections are preserved, but it's a tentative ruling because Mr. Cruz wasn't there yet. At a subsequent hearing, the court did say, unless we go through the drill. But even that, there's some ambiguity in that. Well, if I'm Petitioner's counsel, I want Cruz to be there. It seems to me I'm being invited by the court to stand up and speak. Nobody stands up and speaks. And frankly, get to the IAC issue, we're speculating to some degree, but I can figure out reasons why I don't want Mr. Cruz to be there testifying live. I may figure I've got a better chance if I'm dealing with just a bunch of secondhand statements and can try to impeach those. So it may well have been a calculated decision on the part of Petitioner's counsel. Except the trial counsel argued vehemently about he was being deprived of his right to confrontation. He raised it at those several hearings. He raised it again at trial three or four times in these proceedings. He argued that his client's right of confrontation was being denied by the absence of Cruz. Well, he's trying to exclude the secondhand rendition. That doesn't mean he wants Cruz to show up personally. You know, cross-examination of Cruz would have offered counsel so many opportunities. One, Cruz would have been under oath. He would have been impressed with the gravity of the proceedings. The jury could have observed him. He would have been subjected to cross-examination. There were so many inconsistencies internally in his statement and in comparison to the witness's statement that to waive cross-examination under those circumstances, to me, constitutes ineffective assistance of counsel. Then the other issue, apart from unavailability, is the reliable effect. Scalia. It seems to me you're mixing two issues. You've got the ineffective assistance of counsel, which is a separate issue from whether or not, in fact, there was a waiver, right? Or maybe you agree. Maybe you agree he did not assert his right at that point. I mean, the fact that he did waive, when the judge in the passage that Judge Clifton read raised that and was met with silence, that presumably is a waiver, is it not? I'm proposing two different ways for the Court to address the merits of the unavailability issue. One is ineffective assistance. But they're two separate issues, though, as a matter of law. One is the ineffective assistance argument, whether he should have done something. What we're looking at as a threshold issue is did he do anything. And the answer, it seems to me, is nothing, other than that quote by the trial court earlier in the proceedings that all objections are preserved. Nothing. Kennedy. Your argument is that he somehow, he preserved it at the trial, but if he didn't, he was ineffective. Is that the argument? Is it? Correct. And then there's another argument that I made a few moments ago that the magistrate found in that footnote that there was a procedural default by the attorney general in failing in his answer to object. That's how the magistrate got to the merits of the unavailability issue. He found that the state had not objected, therefore, it was procedural default on the unavailability issue. And then the remaining issue is the reliability. And, you know, that issue has been extensively briefed. As Judge Reinhart pointed out, in its decision, the state court did not quote any of the Federal decisions, not that that's required, but really its entire discussion of the Confrontation Clause issue is that one line in footnote 6 that says for the same reasons we find that there wasn't a violation of the Confrontation Clause. Now, in fairness to the Court, those same reasons were the ones that Mr. Mercer identified in which it did go through 1370, which is the evidence code, which is a comparable in some extent to Ohio v. Roberts. Mr. Young, it seems to me that I need some help on this. The state court made a finding of fact that he never wavered, he had no motive to lie, and that he was afraid of gang retaliation. Now, those are findings of fact to which we owe some deference. Do we not? I think in the Confrontation Clause context, those are mixed questions of law and fact. You know, they go directly to the heart of the Confrontation Clause issue. So and that's the ‑‑ there's still deference is owed, but I think the standard's a bit different. Well, we're still functioning under the reasonable application of Supreme Court law or reasonable application of the facts. Correct. And isn't the burden on you to establish that there's unreasonableness in one category or the other? Well, the burden was on the State in the trial court. Certainly at this Court, since it's being reviewed de novo, the district court's decision, it is ‑‑ the question is, was the State court objectively unreasonable? That is the standard. Right. And I'm giving you a chance to persuade me that it was objectively unreasonable, and I haven't heard it yet. Well, one was the statements were corroborated. Assuming that's a purely factual question, that was unreasonable. Cruz's statements contradicted themselves. Well, I think Judge O'Scanlan gave you three elements that he asked you about. And I think I'm addressing those. One was inconsistencies in Cruz's statement. In the first statement, he said that my client had done the shooting. In the third statement, he said my client, two other people had done the shooting. So he contradicted himself about who did the shooting. In one of the statements, he said, my door was open, they came into the apartment. In another statement, he says, they were outside, and an encounter happened outside, and they dragged him into the apartment. So on the fundamentals of the case, Cruz's statements were internally inconsistent. They were also inconsistent with the witness's, Rodriguez's statement, who said that they had, for instance, walked up, whereas Mr. Cruz said that they arrived in their car. And even in his prior decision, this court found that Rodriguez, the witness's statements were internally inconsistent. As to fear of retaliation, I think that was another factor. He was a reluctant witness, but whether that goes to fear of retaliation or the police were badgering him to produce an identification, I'm not sure. But on the first occasion, he said he was drunk, Mr. Cruz, the victim. So his ability to observe what happened, his identifications in the photographs were inconsistent. Not only do we have the debate we raised earlier about child versus child, he was known as Papa. The gang police officer who testified and knew all about these members, all testified, he testified he knew him only as Papa. And so in the first identification, all that Cruz says is one of the assailants is someone known as Child. He doesn't have a person to point to. He's being interrogated at the scene. At the hospital, a couple of days later, the police officer says that he points to a picture of my client and says that's Child, but we don't know if that's true because he refused to circle the photograph as he did for another defendant. He refused to sign his name. So all we have is the officer's word about what Cruz supposedly said. And that's the purpose of cross-examination, to bring that out at trial. And at the third time, which was the recorded statement, he did identify my client. So there's inconsistencies even in his identification of my client as the person. So he did waver in his identifications. He did have motive to fabricate his identifications. He was facing, in the third case, in the third statement, he was facing felon in possession of gun charges with several prior drug cases, a potential three strikes case. And it's in the transcript of that interview that he says words to the effect of what can you do from the officer. And even in the second statement, he had motive to fabricate because something that appeared to be drugs was found in the house. He refused to let the officers in. So all those factors, Judge O'Scanlan, I do think, whether it's finding the fact of unreasonable application, the state court's decision was objectively unreasonable. And if no other questions, I'll submit. Thank you. Thank you. Your Honor, I would submit that the finding that a declarant did or did not have a motive to lie or to tell the truth is not a question of law. It's a question of fact. And the determination whether two pieces of evidence or statements are consistent or inconsistent is not a question of law. It's a question of fact. We can argue all day long, as we would to a jury in closing argument, whether or not the statements were inconsistent or whether they were consistent, whether someone had a motive to lie or whether they didn't, what child meant, was it child, all day long. So the state courts have made factual determinations that Petitioner was identified at the scene, factual determinations about his motive to lie, factual determinations that his statements were consistent. There's a – if there's no dispute about the facts, but a court says those facts aren't sufficient to constitute a motive, I don't see why that's a question of fact. I mean, everybody agreed on what the facts were. And he said, well, that's not a sufficient motive. Now, you think that's not a mixed question of fact or law? That's a question of fact? I think that a declaration by the state court that Cruz did not have a motive to lie is a question of fact. Now, their ultimate conclusion – I know you think that. I'm not quite sure why. I don't know why, when all the facts are agreed on, everybody knows that he's been accused of a crime, that he would like to get a – have less problem if he goes to prison, that he'd like help with the prosecutor. I mean, no one's denying any of the facts. And the question is, is that a motive for lying? And the judge says, well, I don't think that's a motive. Why is that a determination of fact rather than a mixed question of fact or law, fact and law, whether all that constitutes a motive? Well, I may not be able to convince Your Honor one way or the other. In my opinion, that would be a finding. I would say it's analogous to a determination on appeal that a witness was credible, for example. I don't think that that's a finding of law. I think that's a finding that a jury would make, and I think that's a finding that the state court made here. Obviously, if I'm not persuasive on that point, I don't think that's really the central issue to this case. I would also like to respond briefly to the issue of the waiver of the unavailability claim. I think that I outlined pretty clearly in my reply brief that that particular enumerated claim was raised in the California Court of Appeal, it was raised in the California Supreme Court, and then it disappeared from the federal petition. And the people and the respondent objected to the very first opportunity that we had to respond to that issue, which was when the report and recommendation was issued, pointing out to the district court that that claim was not in the petition and it was not properly raised before the court. Now, wait, I am now confused. You say it was raised, the unavailability was raised in the California Court of Appeal and in the California Supreme Court? I'm sorry, I misspoke. I believe it was raised in the California Court of Appeal. But not in the Supreme Court. And not in the Supreme Court. I apologize. It's been several years. That's all right. And we have a complicated procedural history. But I do know that I objected at my very first opportunity on that matter. But let's put that aside and assume for the sake of argument that this Court decides to reach that merit, just like the California Court of Appeal did in the alternative, finding that trial counsel waived it, it's defaulted, but we're going to address the IAC claim anyway. There is simply no United States Supreme Court authority that compelled a prosecutor or representative of the people to prove the unavailability of a witness after a trial court has already made the ruling and made a legal finding saying the witness is unavailable. And in this particular case, the parties agreed on it. There's simply no authority that requires a deputy district attorney anywhere to say, well, Your Honor, I understand your ruling, but I want to call witnesses and offer you evidence anyway. It would be an exercise in futility. And in that sense, whether it's preserved for adjudication on the merits here or not, it doesn't survive in a DEPA deferential review. There's simply no way that a petitioner could be entitled to habeas relief on that particular. Kennedy, what about on the ineffective assistance of counsel if he waived in the trial court unavailability? Well, I think that the California Court of Appeal addressed that situation. And they said that, listen, there are lots of good tactical reasons why an attorney would not want to hear live testimony from Cruz. Now, Mr. Young points out that, hey, cross-examination would have been helpful. On the flip side of the coin, though, is that the prosecutor could have examined Cruz and told him to identify the petitioner in the courtroom. So all this involves 20-20 hindsight. But didn't this – I'm missing something in here that I don't understand. Maybe because I wasn't here the first time. I thought that he did object to receiving the declaration into evidence on these other grounds, not the unavailability, the unreliability. Well, he surely didn't want any of the statements to come in. Yeah. But as was pointed out, that's a difference. What's the difference between the unavailability argument and the unreliability argument as far as not wanting the witness there? Well – I mean, how can it be a tactical decision on one and not on the other? Well, as I pointed out in my briefing, the statements, the subsequent statements that came in were actually in many ways more beneficial to the defense than simply the initial crime scene statement on its own, which was highly incriminating. There was, as Mr. Young pointed out, a refusal to sign the name to the photograph, and there was a subsequent disavowal of a gang purpose, which would have tended to benefit the Petitioner in this case. So I hope that answers your question. And I think that's pretty well covered in the briefing. All right. Thank you, counsel. Unless there are further questions, I would submit. Thank you very much. Thank you, Your Honor. Case disbanded will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, O'scannlain, Clifton